1998 ME 255

**STATE of Maine**

v.

**Mark BOLDUC.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1998.
Decided Dec. 3, 1998.

David W. Crook, District Attorney, Evert Fowle, Asst. Dist. Atty., Augusta, for State.

Karen JM Mitchell, Law Offices of P.J. Perrino, Jr., Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] The State appeals pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1997) from an order entered in the District Court (Au-

gusta, *Beliveau, J.*) suppressing evidence that Mark Bolduc operated a vehicle under the influence of intoxicants in violation of 29–A M.R.S.A. § 2411 (1996).[1] Because there were articulable facts which warranted the investigatory stop and there was probable cause to require that Bolduc take a blood-alcohol test, we vacate the order.

[¶ 2] On September 26, 1997, at approximately 10:00 p.m., Deputy Sheriff Eric Testerman of the Kennebec County Sheriff's Department overheard a report from the state police that a motorist had seen a "cream-colored king cab pickup" truck heading north on Interstate 95 at ninety miles per hour. According to the report, the truck was swerving from lane to lane and had almost hit the guardrail.

[¶ 3] Upon hearing the report, Testerman positioned himself north of where the truck was last seen on the Interstate. Three minutes later, Testerman spotted a cream-colored king cab pickup-truck heading north along the Interstate at seventy four miles per hour. Testerman followed the truck, observed it pass two vehicles, and pulled it over two miles north of where he had first seen it.

[¶ 4] When he asked the driver, Mark Bolduc, for his license and registration, Testerman could smell alcohol on his breath. Bolduc admitted that he had consumed two beers with dinner at 7:30 p.m. After checking Bolduc's license and registration, Testerman asked him to perform two field sobriety tests. When Bolduc attempted to perform the "heel-to-toe" test, he left spaces between steps and appeared to be unbalanced. Next, Bolduc counted backwards from 65 to 49. Although he counted correctly, Testerman observed that his speech was deliberate and slurred and that his eyes were glossy. Based on these observations, Testerman brought Bolduc to the police station to administer a blood-alcohol test. Bolduc filed a motion to suppress, and, after a hearing, the court suppressed all evidence obtained subsequent to the vehicle stop.

1. Title 29–A M.R.S.A. § 2411 states, in part:
   **1. Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:

## I. INVESTIGATORY STOP

[¶ 5] An investigatory stop is valid when it is "supported by specific and articulable facts which, taken as a whole and together with rational inferences from those facts, reasonably warrant the police intrusion." *State v. Taylor*, 1997 ME 81, ¶ 9, 694 A.2d 907, 909 (quoting *State v. Hill*, 606 A.2d 793, 795 (Me.1992)). A civil violation "provides adequate specific and articulable facts." *Id.* (holding that officer's testimony that rear license plate was unilluminated supported a reasonable suspicion).

[¶ 6] There were articulable facts which warranted an investigatory stop of Bolduc's vehicle. Before Testerman stopped Bolduc he had recorded Bolduc driving seventy four miles per hour. Driving over sixty five miles per hour "on the Maine Turnpike or the Interstate Highway System" is a traffic infraction. 29–A M.R.S.A. § 2074(3) (1996 & Supp.1997). Speeding was an articulable fact which warranted an investigatory stop of Bolduc's car. *See Taylor*, 1997 ME 81, ¶ 9, 694 A.2d at 910. Whether a reasonable police officer would normally have stopped Bolduc for exceeding the speed limit by nine miles per hour is not important to the analysis. *See Whren v. United States*, 517 U.S. 806, 813–16, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

## II. PROBABLE CAUSE

[¶ 7] Probable cause to arrest for purposes of requiring a blood-alcohol test exists when "facts and circumstances of which the arresting officer has reasonably trustworthy information would warrant an ordinarily prudent and cautious police officer to believe the subject did commit or was committing a crime." *State v. Boylan*, 665 A.2d 1016, 1019 (Me.1995). The amount of evidence necessary to establish probable cause "is less than the level of a fair preponderance of the evidence." *State v. Cilley*, 1998 ME 34, ¶ 11, 707 A.2d 79, 83.

A. While under the influence of intoxicants; or
B. While having a blood-alcohol level of 0.08% or more.

[¶ 8] "A person is guilty of [operating under the influence] if his mental or physical faculties are impaired, however slightly or to any extent." *Id.* In light of this standard, "probable cause to believe a defendant was operating under the influence exists if there is reason to believe that his mental or physical faculties are impaired by the consumption of alcohol." *Id.* (quoting *State v. Bradley*, 658 A.2d 236, 237 (Me. 1995)).

[¶ 9] The trial court clearly erred in finding that there was not probable cause to believe that Bolduc was operating under the influence. In the aggregate, the report that a truck with a similar style and color had recently been driving erratically on the same road, the smell of alcohol on Bolduc's breath, his admission that he had consumed two beers that evening, his slurred speech and glossy eyes, and his poor performance on a field sobriety test, warranted a reasonable officer to conclude that Bolduc was driving while intoxicated. *See Boylan*, 665 A.2d at 1019 (officer could have formed reasonable belief that defendant was driving while intoxicated where defendant's breath smelled of alcohol, his eyes were bloodshot and glassy, and he failed field sobriety tests).

The entry is:

Judgment vacated.

