MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 36
Docket:       Yor-16-168
Argued:       December 15, 2016
Decided:      March 2, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


STATE OF MAINE

v.

ROBERT I. BOYD JR.


SAUFLEY, C.J.

[¶1]  The State of Maine, with the approval of the Attorney General, *see* 15 M.R.S. § 2115-A(1), (5) (2015);[1] M.R. App. P. 21(b), appeals from an order of the court (York County, *Driscoll, J.*) granting Robert I. Boyd Jr.'s motion to suppress evidence obtained by drawing his blood and testing it for alcohol without obtaining a search warrant.  The State challenges the court's determination that the State failed to prove that Boyd consented to the blood draw, and argues that the search of Boyd's blood did not violate the Fourth Amendment.  We affirm the order of suppression.

---

[1]  Title 15 M.R.S. § 2115-A(5) was recently amended, though not in a way that affects this appeal. *See* P.L. 2015, ch. 431, § 23 (effective July 29, 2016) (codified at 15 M.R.S. § 2115-A(5) (2016)).

# I. BACKGROUND

[¶2] The court found the following facts, all of which are supported by competent evidence in the record. *See State v. Morrison*, 2015 ME 153, ¶¶ 2, 5, 128 A.3d 1060. At about 10:00 a.m. on October 14, 2015, an officer of the Sanford Police Department stopped a vehicle operated by Boyd for continuing to have an expired inspection sticker one month after having been stopped for the expired sticker. In speaking with Boyd, the officer noticed the smell of alcohol on Boyd's breath. The officer asked Boyd how much he had had to drink that day. Boyd said that he was hung over, but he denied having had any alcohol that day.

[¶3] The officer conducted multiple field sobriety tests and, based on what he observed, determined that he had probable cause to arrest Boyd for operating under the influence. *See* 29-A M.R.S. § 2411(1-A) (2016). The officer arrested Boyd and transported him to the Sanford Police Department to administer a breath test for alcohol. *See* 29-A M.R.S. § 2411(4) (2016). The machine there malfunctioned, and the officer sought another location with an operational machine. The officer transported Boyd to the Wells Police Department where, during the fifteen-minute observation period before a

breath test could be administered, Boyd coughed several times, which could bring alcohol into the mouth and invalidate the test results.

[¶4]  The officer then located a paramedic to draw a sample of Boyd's blood.  The officer did not obtain Boyd's consent to the blood test.  Nor did the officer read any warnings to Boyd about the consequences of refusing to submit to testing, *see* 29-A M.R.S. § 2521(3) (2016), seek or obtain a warrant for the blood test, or inform Boyd that he could request that a physician perform the blood draw, *see* 29-A M.R.S. § 2521(2) (2016).  Boyd did not expressly refuse or object to the blood testing, and the paramedic drew his blood.

[¶5]  On November 20, 2015, Boyd was charged by complaint with operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A), (5) (2016), based in part on the allegation of a blood test measuring 0.15 grams of alcohol per 100 milliliters of blood.  Boyd pleaded not guilty and moved to suppress all evidence obtained through the blood test.  The court held a hearing on the motion on March 15, 2016.

[¶6]  In an order entered nine days later, the court ordered the suppression of the blood test result, finding that the officer did not obtain a warrant or seek Boyd's consent, and that Boyd's "amenability and

acquiescence without objection to [the officer]'s direction/command/request that he submit to a blood draw does not rise to the level of consent." The court concluded that there were no exigent circumstances generating an exception to the warrant requirement and that the blood sample was obtained in violation of the Fourth Amendment.

[¶7] With the written approval of the Attorney General, the State appealed from the court's order. *See* 15 M.R.S. § 2115-A(1), (5); M.R. App. P. 21(b).

## II. DISCUSSION

[¶8] A blood test for alcohol or drugs is different from a breath test in that it is more intrusive and therefore constitutes a search that more seriously infringes on the protections of the Fourth Amendment. *See Birchfield v. North Dakota*, 579 U.S. ---, 136 S. Ct. 2160, 2173-2185 (2016). For the results of a blood test to be admissible in the State's case-in-chief, the search effectuated through that blood test must meet the Fourth Amendment's requirement that a search be reasonable. *See id.* at ---, 136 S. Ct. at 2173. A search is reasonable if it is conducted pursuant to a legally obtained warrant or if an exception to the warrant requirement applies. *See* U.S. Const. amend. IV; *Birchfield*, 579 U.S. at ---, 136 S. Ct. at 2173. For instance, a warrant is not required if a person

voluntarily consents to the blood draw or if exigent circumstances exist. *See Birchfield*, 579 U.S. at ---, 136 S. Ct. at 2173-74, 2185; *Missouri v. McNeely*, 569 U.S. ---, 133 S. Ct. 1552 (2013); *Georgia v. Randolph*, 547 U.S. 103, 109 (2006).

[¶9] Here, the State does not argue that it obtained a warrant or that there were exigent circumstances. The State argues only that the court erred in determining that Boyd did not consent to the search because Boyd's acquiescence, combined with the effect of the "implied consent" statute, constituted consent.

[¶10] The State is correct that a search in the form of a blood test is reasonable, even without a warrant, if a person freely and voluntarily consents to the search. *See Randolph*, 547 U.S. at 109; *State v. Cress,* 576 A.2d 1366, 1367 (Me. 1990). To demonstrate that the consent exception to a warrant requirement applies, however, the State must prove, "by a preponderance of the evidence, that an objective manifestation of consent was given by word or gesture." *State v. Bailey*, 2012 ME 55, ¶ 16, 41 A.3d 535 (quotation marks omitted).

[¶11] Because the State bore the burden of proof and was the unsuccessful party before the suppression court, the State bears the burden to demonstrate on appeal "that the trial court was compelled to make findings in

its favor." *State v. Collier*, 2013 ME 44, ¶ 6, 66 A.3d 563. We review the court's findings for clear error. *See State v. Nadeau*, 2010 ME 71, ¶ 18, 1 A.3d 445.

[¶12] The court was not compelled, based on the evidence presented, to find that Boyd's acquiescence to the blood draw demonstrated his voluntary consent and overcame the warrant requirement. *See Cress*, 576 A.2d at 1367 (holding that, to demonstrate voluntary consent, the State must show "more than a mere 'acquiescence to a claim of lawful authority'" (quoting *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968))). The police officer who arrested Boyd testified only that Boyd did not object to testing and that he was "very cooperative." The paramedic similarly testified that Boyd did not object to the blood draw. This evidence does not compel a finding of an objective manifestation of voluntary consent. *Bailey*, 2012 ME 55, ¶ 16, 41 A.3d 535; *cf. Cress*, 576 A.2d at 1367 (affirming the denial of a motion to suppress evidence obtained after the defendant taxidermist manifested his consent to the search by accompanying game wardens into his basement shop, where he unlocked, opened, and emptied his freezer).

[¶13] Thus, we turn to the State's argument that Maine's "implied consent" statute, when combined with Boyd's acquiescence to the blood draw, had the effect of establishing Boyd's voluntary consent. Maine's statute,

although still entitled "Implied consent to chemical tests," no longer provides that a person will be "deemed" to have consented to testing by operating a motor vehicle on Maine's roads. *Compare* 29-A M.R.S. § 2521 (2016), *with* 29 M.R.S.A. § 1312 (1978) (deeming a person who operated a motor vehicle to have consented to testing, until amended by P.L. 1981, ch. 679, § 12 (effective April 15, 1982)).[2] Rather, it now provides that a person "shall" submit to testing upon probable cause to believe that he or she has operated under the influence and specifies the consequences for a refusal to submit despite the mandatory language and warnings. 29-A M.R.S. § 2521(1), (3), (5). Accordingly, the statute no longer allows an adjudicator to imply a driver's consent to blood testing based merely on the driver's operation of a vehicle.

[¶14] Had the officer sought and received Boyd's voluntary consent, the test results would have been admissible. *See Cress*, 576 A.2d at 1367; *Randolph*, 547 U.S. at 109. If Boyd had responded to the request for consent by refusing to give it, the officer would have known to warn of the

---

[2] *Cf. State v. Charlson*, 377 P.3d 1073, 1075 n.1, 1079-81 (Idaho 2016) (holding that the operation of an implied consent statute by which a driver "shall be deemed to have given his consent" to testing is part of the totality of the circumstances relevant in determining a driver's consent, such that the Fourth Amendment requires courts to determine whether a driver *withdrew* implied consent (quotation marks omitted)); *Wolfe v. Commonwealth*, 793 S.E.2d 811, 813-15 (Va. Ct. App. 2016) (affirming the denial of a motion to suppress blood test results when the driver "did not verbally or physically refuse the blood test" but by statute was "deemed . . . to have consented" to testing and refusal would result only in a civil penalty (quotation marks omitted)).

consequences of refusal, *see* 29-A M.R.S. § 2521(3), and to ascertain that Boyd was refusing to consent with full knowledge of the possible consequences.[3] The officer could then have determined whether to seek a warrant or further pursue an accurate breath test.

[¶15]  Based on the evidence admitted here, however, which the parties agree did not show that Boyd refused the blood draw, and which did not compel the court to find that Boyd voluntarily and explicitly consented to it, the court properly analyzed whether, based on all of the circumstances, the State proved that Boyd objectively manifested consent.  *Bailey*, 2012 ME 55, ¶ 16, 41 A.3d 535.  The evidentiary record does not compel a finding that Boyd freely and voluntarily consented to the drawing and testing of his blood through his mere acquiescence and cooperation.  *See Cress*, 576 A.2d at 1367; *see also Collier*, 2013 ME 44, ¶ 6, 66 A.3d 563.

The entry is:

> Order of suppression affirmed.

---

[3]  Because Boyd did not "refuse" the blood test, we need not opine on the consequences, pursuant to Maine's statutes or emerging Fourth Amendment jurisprudence, of a refusal to submit to a blood test.  *See Birchfield v. North Dakota*, 579 U.S. ---, 136 S. Ct. 2160, 2185-86 (2016).

Joshua K. Saucier, Asst. Dist. Atty. (orally), York County District Attorney's Office, Springvale, for appellant State of Maine

Amy McNally, Esq. (orally), Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellee Robert I. Boyd Jr.

York County Unified Criminal Docket docket number CR-2015-30829
FOR CLERK REFERENCE ONLY